THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LEVY | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | **3:11-CV-364** |
| | : | **(JUDGE MARIANI)** |
| FREDERICK LEVY, PAZZO, INC. | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Plaintiff's Motion for Summary Judgment on Defendants'
Counterclaim for Fraudulent Inducement (Doc. 18). For the reasons that follow, the Court
will deny Plaintiff's motion.

### II. Statement of Undisputed Facts

Plaintiff Richard Levy ("Rick") and Defendant Frederick Levy ("Fred") are first cousins
who were formerly equal shareholders in Defendant Pazzo, Inc. ("Pazzo"), a wholesaler of
women's shoes. Before forming Pazzo, they "had worked together for more than twenty
(20) years in the family-owned business known as B. Levy & Son." (Plaintiff's Statement of
Facts ("SOF"), Doc. 18, Ex. 1, ¶ 9). In approximately March 1997, Fred founded Pazzo,
which was formally incorporated on March 26, 1997. (*Id.* at ¶¶ 10-11). Pazzo is in the
business of selling and distributing shoes. (*Id.* at ¶ 12).

"In or about May, 1997, B. Levy & Son's lender liquidated the merchandise and inventory of B. Levy & Son by, *inter alia*, selling some of the remaining merchandise and inventory to Pazzo, Inc." (*Id*. at ¶ 13). Soon thereafter, "Plaintiff's employment at B. Levy & Son ceased," and he "invested $250,000.00 in Pazzo, Inc., which was the same amount invested by Defendant Fred Levy when he had formed Pazzo, Inc. approximately two (2) months earlier." (*Id*. at ¶¶ 14-15). Plaintiff and Defendant "agreed that they owned the Company in equal shares." (*Id*. at ¶ 16).

Plaintiff and Defendant "worked together at Pazzo, Inc. for ten (10) years but then, during 2007, for a variety of business and financial reasons, Plaintiff suggested to Defendant Fred Levy that the business operations of Pazzo, Inc. be wound-up and the business be dissolved." (*Id*. at ¶ 18).

In September 2007, Fred believed that he and Rick had reached an agreement by which Rick would sell his interest in Pazzo to Fred. The parties relied on their uncle, Irwin Levy, "to draft the terms of their agreement based upon telephone discussions with their uncle." (*Id*. at ¶ 19). On September 25, 2007, Irwin Levy sent a draft Memorandum Agreement incorporating the terms to which he believed Rick and Fred had agreed. (Compl., Ex. A). Although the parties agree that they never signed a final written agreement, they dispute whether an orally binding contract was ever created.

In September 2007, Plaintiff's employment at Pazzo ceased, but he continued to engage in efforts to collect outstanding accounts receivable of Pazzo so he could obtain his

2

collateral back from Milberg Factors, Pazzo's financing company. (SOF at ¶ 20). Fred advised Pazzo's financing company, Milberg Factors, that he had bought out Plaintiff's interest in Pazzo and requested Milberg to release Plaintiff's posted collateral. (*Id.* at ¶ 28).

Defendants counterclaimed for fraudulent inducement and are seeking damages in excess of $250,000. (Counterclaim, Doc. 9, at ¶ 10). Fred admitted that he, as President of Pazzo, filed federal tax returns that declared he and Plaintiff each owned fifty percent (50%) of Pazzo for tax years 2006 and 2007. (SOF at ¶ 26). However, Fred declared that he owned one hundred percent (100%) of Pazzo for tax year 2008. (*Id.* at ¶ 27). Fred has admitted that he has never paid Plaintiff any amount of money to purchase Plaintiff's fifty percent (50%) ownership interest in Pazzo. (*Id.* at ¶ 30).

## III. Analysis

### a. Standard on Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts

contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan*

*v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"Inferences should be drawn in the light most favorable to the non-moving party, and where the

non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as

true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert.*

*denied* 507 U.S. 912 (1993).

### b. Discussion

Defendant's sole counterclaim against Plaintiff is for common law fraudulent

inducement. Plaintiff advances two arguments in support of his motion for summary

judgment on Defendant's counterclaim: (1) Defendant cannot assert fraudulent

misrepresentation for failure to perform a future act and (2) Defendant's claim is barred by

the "gist of the action" doctrine. Both of these arguments are assertions of law which the

Court can address without resolving the facts of this case.

To establish a fraudulent inducement claim under Pennsylvania law, Defendant must

prove the following elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made
> falsely, with knowledge of its falsity or recklessness as to whether it is true or
> false; (4) with the intent of misleading another into relying on it; (5) justifiable
> reliance on the misrepresentation; and (6) the resulting injury was proximately
> caused by the reliance.

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct.

2005). Defendant must prove the elements of fraud with clear and convincing evidence.

4

*EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275-76 (3d Cir. 2010) (citing *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. Ct. 2002)). "Scienter, or the maker's knowledge of the untrue character of his representation, is a key element in finding fraudulent misrepresentation." *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 290 (Pa. Super. Ct. 2010).

"It is well-established that the breach of a promise to do something in the future is not actionable in fraud." *Id.* (internal citations and quotation marks omitted). However, "[a] statement as to future plans or intentions is not fraudulent under Pennsylvania law *unless* it knowingly misstates the speaker's true state of mind when made." *Nat'l Data Payment Sys. Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3d Cir. 2000) (citing *College Watercolor Group, Inc. v. William H. Newbauer, Inc.* 360 A.2d 200, 206 (Pa. 1976)) (emphasis added). Defendant has alleged that Plaintiff

> represented to Fred that he would sign a written agreement incorporating the terms to which they agreed during the Fall 2007 after Fred obtained the release of his $150,000 collateral from Milberg knowing that his representation was false when he made it and with the sole intent that Fred would rely on it.

(Counterclaim, Doc. 9, ¶ 9). The counterclaim rests on Defendant's contention that Plaintiff misrepresented his true state of mind when he promised to sign a written agreement in the future. Because Defendant has alleged more than a mere failure to perform a future act, Plaintiff's argument fails. The misrepresentation, if true, was a "misrepresentation of a . . .

5

present material fact" because the statement was false when made. *See Krause v. Great Lakes Holdings, Inc.*, 563 A.2d 1182, 1187 (Pa. Super. Ct. 1989).

Furthermore, Defendant's counterclaim is not barred by the "gist of the action" doctrine, which "is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Mirizio v. Joseph*, 4 A.3d 1073, 1079 (Pa. Super. Ct. 2010). "While the gist of the action doctrine may bar a tort claim arising from the *performance* of a contract it does not bar a fraud claim stemming from the fraudulent *inducement to enter* into a contract." *Id.* at 1085 (emphasis added).

Fred has claimed that Rick "refused to sign any agreement memorializing the terms for Pazzo's purchase of his interest until Milberg released his collateral." (Counterclaim, ¶ 4). In reliance on Rick's promise to sign a written agreement after Milberg released Rick's collateral to Rick, "Fred provided $150,000 additional collateral to Milberg to obtain the release of Richard's $150,000 collateral from Milberg. Richard's collateral was released to him on or about January 8, 2008." (*Id.* at ¶ 5). Thereafter, Rick "refused to sign the formal, written agreement with Pazzo incorporating the terms upon which he and Fred had previously agreed for Pazzo's purchase of Richard's interest. Rather, Richard denied that there was ever any agreement on the terms for Pazzo's purchase of his interest." (*Id.* at ¶

6). These allegations are collateral to whatever contract Rick and Fred may have entered,[1] and thus, Defendant's counterclaim is not barred by the "gist of the action" doctrine.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied. Because the sole issue before the Court is Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim for fraudulent inducement, the Court will not address the factual dispute as to whether Rick and Fred ever created an oral contract for Fred and Pazzo to buy out Rick's interest in Pazzo. A separate Order follows.

Robert D. Mariani
United States District Court Judge

---

[1] As stated before, Plaintiff claims that he and Defendant Fred Levy reached an oral agreement, whereas Fred claims that they never resolved an essential term to the contract, meaning they never reached an agreement. If they never formed a contract, then Defendant's counterclaim would not be barred by the "gist of the action" doctrine because there is no possibility of bringing a redundant claim. If they did form a contract, the doctrine still would not bar Defendant's counterclaim, because Fred asserts that Plaintiff's promise of a written agreement incorporating the essential terms Fred desired (i.e., that Rick would bear half of any contingent liabilities incurred but undiscovered during Rick's period of ownership) induced him to obtain the release of Plaintiff's collateral by Milberg Factors. (Fred Levy Dep., Doc. 18, Ex. B, at 94:5-95:4).

The draft Memorandum Agreement (Compl., Ex. A, ¶ 2) does not place any time limitations on Rick's potential contingent liabilities, which is what Fred insists he and Rick agreed upon, whereas Fred testified that Rick sent him multiple e-mails in January 2008 (which are not part of the record) disputing that Rick could potentially remain liable for contingencies indefinitely. (Fred Levy Dep., at 155:2-158:10) (quoting from Rick's e-mail, "It has been nearly six months so everything should have popped up by now."). Furthermore, Rick sent two proposed Memorandum Agreements to Fred in 2008 and 2009 which placed time limitations on any contingencies for which Rick might be liable (id. at 92:9-95:4; see also Rick Levy Dep., Doc. 18, Ex. C, at 104:23-105:24). Finally, Rick acknowledged that Fred was concerned about potential, yet undiscovered, liabilities for which Rick might be responsible. (Rick Levy Dep., at 88:18-22; 91:19-92:21). There are material issues of fact that preclude any finding as to the existence of an oral agreement between Rick and Fred that makes the instant motion inappropriate for resolution on summary judgment.